SHAWN A. LUIZ (6855)
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
Telephone:  808-538-0500
Facsimile:  808-564-0010
E-mail: attorneyluiz@gmail.com

*Of Counsel*
JOSEPH A. GOMES, AAL LLC (6789)
3820 Old Pali Road
Honolulu, Hawaii  96817
Telephone:  808-780-4179
E-mail: joegomesesq@gmail.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JARED E. APILADO, | Civil No.: _____ |
| Plaintiff, | |
| vs. | **COMPLAINT FOR EMPLOYMENT DISCRIMINATION; DEMAND FOR JURY TRIAL; SUMMONS** |
| GRAY MEDIA GROUP, INC., dba HAWAII NEWS NOW; and DOES 1-20, | |
| Defendants. | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

The above-named Plaintiff, by and through his attorneys, and for his Complaint against the above-named Defendants, alleges and avers as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this discrimination in employment action pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (religion); under 28 U.S.C. § 1331 (federal question jurisdiction); and under Hawaii Revised Statutes ("HRS") Chapter 378 (religion).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) because Defendant is a corporation residing in the District of Hawai'i, and a substantial part of the events giving rise to this Complaint occurred in the District of Hawai'i.

## PARTIES

3. Plaintiff JARED E. APILADO ("Plaintiff") is a resident of Hawai'i.

4. Defendant GRAY MEDIA GROUP, INC., dba HAWAII NEWS NOW ("Defendant") is a for-profit corporation registered under the laws of the State of Hawaii.

5. DOES 1-20 are individuals, partnerships, corporations and/or entities who are sued herein under fictitious names for the reason that their true names and/or responsibilities are presently unknown to Plaintiff except that Plaintiff is

2

informed and believes that they are connected in some manner with known Defendant and/or are responsible for all or a portion of the conduct and damages alleged herein which occurred on or about the dates and times more particularly described in this Complaint, and who are or may be necessary parties in order for the Court to grant the appropriate relief in this matter. Plaintiff has initiated a review of the respective responsibilities relating to its Complaint, as described herein, as a diligent and good faith effort to ascertain the identity, actions, and liability of said unidentified Defendants. Plaintiff will make the name or identity of the Defendants known within a reasonable time after Plaintiff identifies such Defendants and/or their responsibilities.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. All conditions precedent to filing this Complaint under Title VII and HRS Chapter 378 have been performed or have occurred.

7. Plaintiff timely filed a charge of religious discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and with the Hawaii Civil Rights Commission ("HCRC").

8. The EEOC issued Plaintiff a right-to-sue notice on September 21, 2022, and the HCRC issued Plaintiff a right-to-sue notice on October 18, 2022.

9. This case is brought within 90 days of the respective EEOC and HCRC right-to-sue notices.

## FACTUAL ALLEGATIONS

10. Plaintiff is a professional video / journalist, and a Christian with sincerely held religious beliefs.

11. Plaintiff was hired by Defendant on October 17, 2016.

12. Defendant employs over 7,300 employees across the United States, including several hundred employees in Hawai'i.

13. Plaintiff's duties as Defendant's employee include, among other things, editing the morning news show, news gathering, covering lead stories, and documenting with video news items for broadcasting.

14. On or about August 2021, Defendant voluntarily adopted a mandatory covid vaccine policy for its employees ("Policy").

15. On August 6, 2021, Defendant announced its Policy to its employees.

16. Defendant's Policy stated in relevant part the following:

> At this time, to better safeguard the health of our employees and their families; our customers and visitors; and the community at large, we are today adopting a new vaccination policy.

> Effective September 1, 2021, Gray Television will require, as a condition of employment, that newly hired employee, whether part-time or full-time, be "fully vaccinated" against the coronavirus (as defined by the CDC).

> We will grant reasonable accommodations and short extensions of the deadline where warranted . . . .  Our new vaccination policy will be administered in a manner that complies with applicable laws and the most recent guidance from applicable authorities, including the Centers

for Disease Control and Prevention (CDC), the Equal Opportunity Commission (EEOC) and local public health authorities.

17. Even though Defendant's Policy was announced to its **entire** workforce of over 7,300 employees, **only** Defendant's "newly hired employees" were required to comply with the policy.

18. Defendant imposed this nonsensical and discriminatory requirement on **only** its **new** employees, likely very few, despite its assertion that the Policy was urgently needed to "safeguard the health of [all the rest of] our employees and their families; our customers and visitors; and the community at large."

19. On August 16, 2021, more than a week after first announcing the Policy, Defendant significantly revised it, conceding the nonsensical and discriminatory nature of the original version.

20. But the revised Policy was also nonsensical and discriminatory, and it revealed a bizarre arbitrariness, especially given the urgent "unfair risk" it was meant to address.

21. Issued more than a week after its original Policy, Defendant's revised Policy stated in relevant part the following:

> *We know* that the approved COVID-19 vaccines are *extremely effective* in preventing serious illness and reducing the spread of the coronavirus. After extensive discussion among the GMs and officers this week, these individuals UNANIMOUSLY concluded that the increasingly rapid spread of the coronavirus poses **an unfair risk** to fellow employees and their family members who are not able to get vaccinated.

This group therefore UNANIMOUSLY discussed, developed, and then approved expanding our vaccination policy to all employees in two phases as follows:

1. Effective September 15, 2021, Gray Television will require, as a condition of employment, that every employee who occupies a "manager" position in our company be "fully vaccinated" against the coronavirus (as defined by the CDC); and

2. Effective October 1, 2021, Gray Television will require all full-time and part-time employees, as well as all outside contractors, tenants, and guests who enter our workspaces, to be "fully vaccinated" against the coronavirus (as defined by the CDC).

We will grant reasonable accommodations and short extensions of the deadline where warranted[.]

Our new vaccination policy will be administered in a manner that complies with applicable laws and the most recent guidance from applicable authorities, including the Centers for Disease Control and Prevention (CDC), the Equal Opportunity Commission (EEOC) and local public health authorities.

(Caps and bold in original; italics added).

22. Despite the "increasingly rapid spread" and "unfair risk to fellow employees and their family members who are not able to get vaccinated," Defendant's revised Policy did not explain why it delayed the start of its vaccine requirement by two weeks, from September 1 to September 15, or why it required by that date that **only** its managers be "fully vaccinated," **and not** its entire workforce.

23. Nor did the revised Policy explain, despite the "rapid spread" and "unfair risk," why Defendant **delayed for one month**, from September 1st to October 1st, its "fully vaccinated" requirement for all "full-time and part-time

6

employees, as well as all outside contractors, tenants, and guests who enter our workspaces."

24. But more problematic for Defendant, if by imposing the Policy its intent was to prevent the spread of covid by the unvaccinated, then the Policy was irrational and capricious from the start.

25. On December 20, 2020, almost **one year before** Defendant imposed its Policy, the FDA publicly stated that the "data are not available to make a determination about how long the [covid] vaccine will provide protection, *nor is their evidence that the vaccine prevents transmission of SARS-CoV-2 from person to person*."[1]

26. In July 2021, **before** Defendant adopted its Policy, the CDC admitted that the approved covid vaccines do not prevent the transmission of covid between individuals, and that "*vaccinated people . . . can transmit the virus."*[2]

27. So it was clear even before Defendant imposed its Policy that the covid virus was spread by both vaccinated and unvaccinated individuals, and that there were sound alternatives to covid vaccinations.

---

[1] *See*  https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19 (last visited December 14, 2022) (emphasis added).

[2] *See* https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (last visited on December 14, 2022) (emphasis added).

28. Furthermore, prior to Defendant imposing the Policy on its employees, the State of Hawaii and the County of Honolulu both imposed covid vaccine mandates on their employees, but also allowed testing in lieu of vaccination, testing that was provided free of charge to the public.

29. Then, in March 2022, both the State of Hawaii and the County of Honolulu *ended* their mandatory vaccination programs.

30. But Defendant's irrational Policy continues to this day.

31. At the time Defendant issued its Policy, Plaintiff was aware that then approved covid vaccines were created using human fetal cell lines from aborted babies.

32. Plaintiff was also aware that the covid vaccines interfere with the natural function of the human immune system because the vaccines insert synthetic genetic code instructions into the human cell.

33. Both facts violate Plaintiff's sincerely held religious belief as a Christian

34. On August 24, 2021, only days after Defendant issued its revised Policy, Plaintiff, based on his sincerely held religious belief, timely submitted in writing to Defendant his request for a religious accommodation from the Policy, namely its mandatory vaccine requirement.

35. Plaintiff's request was submitted in accordance with and in reliance upon Defendant's policy which stated that "[w]e will grant reasonable

accommodations . . . where warranted" and "[o]ur new vaccination policy will be administered in a manner that complies with applicable laws[.]"

36. Plaintiff's request stated in relevant part the following:

> I am a Christian committed to Jesus Christ as my Savior and Lord and following His word, the Bible, I am requesting a religious exemption from the Covid-19 vaccines. My sincerely held Christian beliefs prevent me from receiving the Covid-19 vaccines. The Bible teaches that God created human beings in his image (Genesis 1:26-27). This means that human life is sacred, and God created the human body and its human immune system to function as he created it.
>
> The Bible also teaches that human life begins at conception (Psalm 139: 13-16). Therefore, abortion is the taking of a human life and is murder and forbidden by God (Exodus 20:13).
>
> The Covid-19 vaccines use fetal cell lines from aborted babies in a part of the process of their creation and development which violates God's will against abortion as described above. The Covid-19 vaccines also interfere with the function of the human immune system which God created by inserting genetic code instructions into the cell that does not originate from the DNA in the cell. Therefore, this process violates God's will for humanity.

37. Included with his request for religious accommodation, Plaintiff voluntarily proposed a list of accommodations in lieu of taking a covid vaccine, demonstrating a good faith willingness to work cooperatively with Defendant to find a reasonable accommodation.

38. Plaintiff's list was not exhaustive and included working from home, wearing a mask when around co-workers, and maintaining social distancing as appropriate.

39. In other words, Plaintiff would continue to follow the established covid safety protocols in place before Defendant imposed the Policy.

40. After submitting his timely request on August 24th, it was several weeks before Defendant provided a substantive response. This lengthy delay despite Defendant's urgent requirement that all employees be "fully vaccinated" by no later than October 1st.

41. Finally, on September 24, 2021, **one month after** Plaintiff submitted his request and **only one week** before its October 1st vaccination deadline, Defendant belatedly responded to Plaintiff's request.

42. Shockingly, Defendant flat-out denied Plaintiff's request.

43. In fact, Defendant did not provide a meaningful response to Plaintiff's request, but instead communicated a canned response based on falsities.

44. In its response, Defendant falsely claimed that Plaintiff did "not identify any specific sincerely held religious belief or practice that prohibits [him] from receiving one of the three available covid vaccines."

45. In his request, however, Plaintiff clearly identified the specific basis upon which his request for religious accommodation was based: His sincerely held religious belief as a Christian that life is sacred, that abortion is murder, that use of aborted fetal cells to develop vaccines is complicity in murder, and that manipulation of human DNA through the Covid-19 vaccines' synthetic

genetic code interferes with the natural function of the human immune system created by God, and violates His will.

46. Defendant also asserted that Plaintiff's request was based on "[c]oncerns about efficacy, long term studies and other general vaccine safety [that] are secular concerns not within the scope of religious vaccine exemption."

47. But nowhere in his request did Plaintiff raise "secular concerns" as the basis for his sincerely held religious beliefs.

48. Other than its dubious reply based on falsities, Defendant did not request any additional information from Plaintiff concerning his sincerely held religious beliefs.

49. Nor did Defendant fulfill its legal obligation to engage Plaintiff in an interactive process to discuss **any** accommodation, despite Defendant's representation that its "vaccination policy will be administered in a manner that complies with applicable law."[3]

50. In truth, it appears that Defendant did not even read Plaintiff's request, or if it did, it entirely ignored Plaintiff's clear statement and the basis for his sincerely held religious beliefs.

---

[3] Indeed, the employer has an obligation to initiate and engage in the interactive process *See, e.g., EEOC Compliance Manual on Religious Discrimination,* Section 12-IV(A)(2) ("If the accommodation solution is not immediately apparent, the *employer* should discuss the request with the employee to determine what accommodations might be effective.")(emphasis added).

51. Defendant also justified its unfair denial based on the following statement: "regardless of any asserted religious belief or practice, [Defendant] cannot accommodate [Plaintiff's] request because there is not a reasonable accommodation that would allow [Plaintiff] to continue [his] role without imposing an undue hardship on the company."

52. However, Defendant provided no support for its conclusory and self-serving assertion that it "cannot accommodate" Plaintiff, or that his proposed accommodation was an undue burden.

53. Instead, Defendant merely claimed that "additional safeguards, such as very frequent testing" would be "unduly burdensome."

54. But Defendant did not explain how or why "very frequent testing" was required as an "additional safeguard," or how or why such testing would be "unduly burdensome."

55. Moreover, Defendant's "unduly burdensome" assertion is completely undermined by its own exception that allowed unvaccinated employees to continue working, while testing weekly and following other public health precautions.

56. In its notice to Plaintiff rejecting his religious accommodation, it stated the following exception for the unvaccinated ("Unvaccinated Exception"):

> An employee who is not fully vaccinated during a temporary deadline extension must continue to comply with all public

health precautions against the coronavirus (face-covering, social distancing, temperature checks, and the like) while within any Gray workspace or within proximity of a Gray employee, customer, contractor, or another individual for work purposes. In addition, each employee who is not fully vaccinated will need to submit a negative COVID 19 PCR test to vaccine@gray.tv at least once each week.

57. If, as Defendant asserted, the threat of covid was spreading rapidly and unvaccinated employees create an "unfair risk," then it makes no sense to allow unvaccinated employees **any** time to work among follow employees and the like, even if they intend to become "fully vaccinated" at some point in the near future.

58. This bald contradiction reveals Defendant's capriciousness and bad faith, and its unlawful disparate treatment towards Plaintiff due to his sincerely held religious beliefs.

59. In essence, Defendant allows some unvaccinated employees, those who do not seek a religious exemption, to continue working while granting them the accommodation to test, mask and social distance. These select employees, even though they were not "fully vaccinated," are not terminated from their employment with Defendant. But Plaintiff, who sought the very same accommodation based on his sincerely held religious belief, was terminated from his employment.

60. Furthermore, regular testing as an alternative to vaccination has been an acceptable practice according to the appropriate authorities. As an example, after mandating the Covid-19 vaccines for its employees, the State of Hawai'i and County employees were offered testing alternatives at weekly intervals, with free testing provided at various locations.

61. On September 28, 2021, Plaintiff responded to Defendant's denial and offered additional reasonable accommodations.

62. In doing so, Plaintiff was again demonstrating a good faith effort to work with Defendant to find a reasonable accommodation.

63. But Defendant did not respond to Plaintiff's September 28th communication, except with silence.

64. Then, on October 1, 2021, Defendant inexplicably terminated Plaintiff's employment.

65. Assuming *arguendo* it is lawful for Defendant to have imposed its Policy as a condition of employment, in so doing Defendant must administer that policy according to the law, not according to its corporate whims. In the case of Plaintiff, Defendant clearly did not follow the law, but followed its whims instead.

66. In this case Defendant's actions, which led to terminating Plaintiff's employment, clearly violated its obligations under 42 USC §§ 2000e to

2000e-17, and HRS Chapter 378, and Plaintiff's religious protections enshrined therein.

67. Plaintiff submitted a timely request to Defendant for an exemption and accommodation from the Policy based on his sincerely held religious beliefs.

68. But Defendant unlawfully denied Plaintiff's request.

69. As a result, Plaintiff faced an immediate "choice" to either:

    a. receive a covid vaccination in direct violation of his sincerely held religious beliefs, or

    b. be terminated from his employment with Defendant as a consequence of exercising his fundamental and statutory rights to refuse the Policy's mandatory term to take a covid vaccine.

70. Such a "choice," however, is illusory and is really no choice at all. In fact, in the employment context and in the case of sincerely held religious beliefs in particular, this is coercive.[4]

71. Following his unlawful termination by Defendant, Plaintiff filed a Charge of Discrimination with the EEOC, and with the HCRC concerning Defendant's religious discrimination under Title VII and HRS Chapter 378, respectively.

---

[4] *See, e.g., Sambrano v. United Airlines, Inc.*, 21-11159, 21 (5th Cir. Feb 17, 2022)(reversing denial of injunction to halt employer's imposition of indefinite leave without pay on employees seeking religious accommodation from Covid-19 vaccine requirement while employees "choose" whether to vaccinate as a requirement to return to work or remain on indefinite unpaid leave)("Plaintiffs are not merely seeking to prevent or undo the placement on unpaid leave itself but are also challenging the ongoing coercion of being forced to choose either to contravene their religious convictions or to lose pay indefinitely.")(petition for *en banc* review denied); *Sambrano v. United Airlines, Inc.*, 21-11159 (5th Cir. Aug 18, 2022).

72. On September 21, 2022, the EEOC issued Plaintiff a right-to-sue-letter, and

on October 18, 2022, HCRC issued Plaintiff its right-to-sue letter.

## CLAIMS FOR RELIEF

### Count I:

**Violation of Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. § 2000e, et seq.):**
**\* Disparate Treatment/Failure to Accommodate on the Basis of Religion \***

73.  The foregoing Paragraphs are incorporated herein.

74.Title VII forbids an employer from refusing a job to someone because of her

need for religious accommodation, absent proof that granting the

accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-

2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774

(2015).

75. This extension of actionable religious discrimination to include a failure to

accommodate derives from Title VII's definition of "religion" to include "all

aspects of religious observance and practice, as well as belief, unless an

employer demonstrates that he is unable to reasonably accommodate to an

employee's or prospective employee's religious observance or practice

without undue hardship on the conduct of the employer's business." 42 U.S.C.

§ 2000e(j).

76. In response to Plaintiff's timely written request for a religious accommodation from its Policy based on his sincerely held religious belief as a Christian, Defendant took an adverse action and terminated his employment. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions include discharging or otherwise discriminating with respect to the terms and conditions of employment based on employee's religion).

77. Before terminating Plaintiff, Defendant flat-out denied Plaintiff's request for a religious accommodation, it relied on a falsity to deny the request, it did not inquire about Plaintiff's sincerely held religious beliefs, it did not initiate or engage in the interactive process, it made no effort to accommodate Plaintiff's sincerely held religious beliefs, and it treated him in an unlawfully disparate manner.

78. And other than conclusory, self-serving statements, Defendant has not identified any burden, let alone any undue burden, that excuses its adverse action against Plaintiff.

79. In fact, accommodating Plaintiff would not have imposed an undue burden on Defendant.

80. Other workplaces have not insisted on mandatory covid vaccinations without allowing accommodations for objectors, with weekly testing promoted by public health officials as one potential accommodation.

81. Defendant voluntarily imposed its Policy that required its employees to comply, or to seek an accommodation, to include a religious accommodation.

82. Whatever Defendant's motive in voluntarily adopting its Policy, it had an obligation to apply the Policy in accordance with the law.

83. Instead, Defendant's actions expose its purported accommodation terms under the Policy as a sham that demonstrates a strong animus towards people, like Plaintiff, with sincerely held religious beliefs and who on that basis object to the Policy's terms and seek an accommodation instead.

84. Defendant's utter disregard of Plaintiff's request for religious accommodation and its unlawful termination of his employment violated Title VII.

85. As a result, Plaintiff suffered lost income and other economic and non-economic damages in amounts to be proven at trial.

## Count II:

### Violation of HRS Chapter 378:
### * Disparate Treatment/Failure to Accommodate on the Basis of Religion *

79. The foregoing Paragraphs are incorporated herein.

80. For the reasons set forth in Count I above, Defendant's unlawful action in rejecting Plaintiff's request for accommodation based on his sincerely held religious belief, treating Plaintiff in an unlawful, disparate manner, and terminating his employment violates HRS § 378-2(a)(1)("It shall be an

18

unlawful discriminatory practice: (1) Because of . . . religion . . . (A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]")

81. As a result, Plaintiff suffered lost income and other economic and non-economic damages in amounts to be proven at trial.

## Count III:

### * Punitive Damages *

82. The foregoing Paragraphs are incorporated herein.

83. Defendant rejected Plaintiff's request for religious accommodation based on his sincerely held religious beliefs.

84. It did so based on reasons that it claimed Plaintiff presented in support of his request, namely "secular concerns."

85. But Plaintiff did not present or rely upon "secular concerns" to support his request.

86. In fact, his request for an accommodation was based on specific, articulated faith-based reasons in support of his sincerely held religious beliefs.

87. Moreover, at no time did Defendant question Plaintiff about his sincerely held religious beliefs, nor did it ask Plaintiff for clarification.

88. Instead, Defendant ignored Plaintiff's stated reasons and created its own false narrative in order to deny Plaintiff's request.

89. Defendant's decision to create and rely upon a falsity, its unfairly disparate treatment towards Plaintiff verses its favorable treatment towards other unvaccinated employees, and its use of coercion to reject Plaintiff's request in order to terminate his employment was intentional, willful, wanton, oppressive, and/or grossly negligent.

90. Furthermore, Defendant applied the Policy in an arbitrary and capricious manner, and its purported "safety" concerns were undermined from the start by relevant FDA and CDC admissions.

91. Plaintiff was severely harmed as a result of Defendant's punitive actions that led directly to, among other things, the loss of his employment, and to his severe mental stress, pain, and suffering.

92. Defendant should be sanctioned as a warning to other employers not to behave in such harmful, anti-social ways.

93. As a result, Plaintiff should be awarded punitive damages in amounts to be proven at trial.

## **REQUEST FOR RELIEF**

94. WHEREFORE, Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated herein, and prays that the Court grant the following relief:

   a. Award Plaintiff all appropriate and legally available monetary relief, including lost compensation and benefits, damages for pain and suffering, and punitive damages in mounts to be determined at trial, to make him whole for the loss he suffered as a result of Defendant's unlawful conduct as alleged in this Complaint, and to sanction Defendant for its punitive conduct;

   b. Award Plaintiff any interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest;

   c. Award Plaintiff a reasonable amount of attorneys' fees for the work of his attorneys in pursuit of this action and the protection of his rights;

   d. Award Plaintiff all costs, disbursements, and expenses that were paid or incurred on his behalf and in pursuit of his claims as set forth in this Complaint;

   e. Award any other relief as allowed by law;

   f. Retain jurisdiction in order to enforce this Court's judgments; and

   g. Award such additional relief the Court deems just and proper.

DATED: Honolulu, Hawaii, December 16, 2022.

/s/ *Shawn A. Luiz*
SHAWN A. LUIZ
JOSEPH A. GOMES

Attorneys for Plaintiff
Jared E. Apilado